The next case is agenda number two, case number 120198, People v. Nelson. I see counsel for appellant is ready. Would you state your name and proceed. Napoli, are you ready? Yes, Your Honor. Thank you. Good morning, Your Honors. My name is Emily Hartman. I'm with the Office of the State Appellate Defender, and I represent Myesha Nelson. The question before this Court this morning is, what was counsel ethically and professionally compelled to refrain from doing for Nelson because of their joint representation of Hall? A conflict of interest arises not in presenting the strategies chosen by defense counsel, but in selecting defenses and strategies in the first place. By jointly representing Nelson after Nelson had implicated Hall, counsel were compromised in the representation of Nelson. Defense counsel went with a justification defense, self-defense, and defense of others. Justifiable use of deadly force in defense of a person requires imminent threat of death or great bodily harm. Nelson told police Wilson tackled co-defendant Rosalind Ball. He was pushing and poking them, but he was on his knees when he was stabbed. She placed the blame on Hall. Hall went after him when everyone else said no. She didn't know Hall stabbed him. She told Hall to stop. This is a plausible alternative defense. Nelson's statement made clear that Hall was driving this entire series of events. She told Hall to stop three times before they even reached Maurice Wilson. She only hit Wilson after he tackled her pregnant friend, Rosalind Ball. Wilson responded by poking and pushing them back. But self-defense draws a clear line between deadly and non-deadly force. There was no deadly force from Wilson. Hall's use of deadly force, therefore, wasn't justified. A defense based on this statement is inherently in conflict with Hall's interests because it undermined Hall's self-defense claim and placed the blame for this series of events on Hall. Counsel, I'm interested if the record actually shows that defense counsel pursued alternative theories, one being the accountability defense  Absolutely, Your Honor. And that does not make any difference that two theories were pursued? Actually, well, there's a two-part answer to that. The first is it doesn't make a difference, but two theories weren't pursued. It doesn't make a difference because, Sullivan, the question isn't about what counsel did. The question is whether there was an adverse effect from the conflict. And Sullivan says an attorney cannot adequately comply with the Sixth Amendment while actively representing conflicting interests. So it's about, it isn't about the actual defense as it played out at trial, as it is about whether there's an adverse effect at all from the defense, from the conflict, excuse me. But the other part of that is that the state's position is actually rebutted by the trial court's findings of fact. The trial court engaged in extensive discussion of the evidence when he found the defendants guilty. He specifically mentioned self-defense, defense of others, defense of property. He made mention of those as the defense raised by all four defendants. He went through the defenses and said, you know, these are the affirmative defenses raised by the defendants. These are the theories of defense raised by the defendants. And then at the very end he said, oh, I should mention before concluding, I took into consideration the law of accountability. But he gave general statements of law of accountability at that point and never said anything about non-accountability with respect to Nelson. Is what's important there what the judge relied upon or what the defense counsel actually pursued? Well, it reflects the fact that if the judge mentioned the other defenses as defenses that were raised but never mentioned non-accountability, it undercuts the state argument that non-accountability was raised. It was mentioned a few times, but every time it was mentioned, it was in a way that didn't hurt Hall. And it was not pursued as a defense. So the judge's findings are, you know, if it was pursued as a defense, the judge would have mentioned it. But on top of that, an examination of closing argument also shows that counsel, you know, she – I'm sorry, but is your position is that the defendant had a right to just the defense being asserted that best put him in the best light? Like, for example, just the lack of accountability defense? No, it's more – the position is the defendant had a right to an attorney who was able to make a choice of whether to go with that defense. And it's not just non-accountability. It's non-accountability based on the statement. So really blaming Hall and placing the blame on Hall. So to phrase it as, you know, a right to have that defense presented by itself isn't exactly what we're getting at because that focuses on what was done as opposed to where the conflict arose in the first place, which is when counsel had to make the decision about which defense to pursue. A non-conflicted attorney may have pursued alternative defenses or may have gone with something different entirely, but a non-conflicted attorney would be capable of making a choice. In this case, though, counsel didn't pursue non-accountability based on the statement. Counsel did or did not? Did not. Counsel never said that Hall went crazy, acted spontaneously or unpredictably. Counsel argued that Hall acted in self-defense. She argued that someone might have been acting in self-defense when they stabbed Wilson, which benefits Hall, and then said that Nelson wasn't accountable because she had left the courtyard by then, but that wasn't supported by the evidence. Nelson admitted being next to Hall when she looked over and saw that she was stabbing because she said she reached over and tried to take the knife at that point and told her to stop. So the statement, the way that counsel argued it, mentioned it in closing, is not consistent with the evidence. It's inconsistent with Nelson's statement. And further, the last thing, the very last thing that counsel said in closing argument was that I would ask that, if anything, you render a verdict of second degree, self-defense, defense of others, or involuntary manslaughter and nothing else. So are there any more questions about the state's other position? Is it the theory that severance cured the conflict? As mentioned in our reply brief, courts have noted that severance does not automatically cure conflict. But on top of that, defense counsel has a duty to his client not to act adverse to her interests. So any duty to Hall that counsel had went beyond just not providing assistance to the prosecution. An example of this is that attorneys are barred from saying negative things about their clients in the media. But it doesn't matter if that would, you know, presumably that's not going to affect the trial. But attorneys still can't do it. You can't act adverse to your client's interests. It's worth noting that the situation here, this is a co-defendants in one case. This isn't the only situation that Sullivan covers. So an example of the way, something that illustrates how severance doesn't cure conflict, the facts of people of United States v. Nicholson from the Fourth Circuit illustrate that. That's where Nicholson was charged in federal court with a firearms charge. And his attorney also represented a man named Butts in state court on murder charges. So that was a separate matter, not even the same court, state and federal. But Nicholson had made a statement saying that he had the gun. He possessed it because he was afraid of Butts. So there's a federal sentencing guideline, downward departure, that's authorized. And that's authorized for self-defense. But Nicholson's attorney didn't argue self-defense. And the court found, you know, even though these are separate, completely separate cases, he couldn't act adverse to Butts' interests by saying, Butts is this murderer that he had a right to be afraid of. You should give him a lower sentence. So, you know, that illustrates, you know, exactly how it wasn't severed cases, but it's the same kind of thing, completely different forms. And yet, you know, the court noted you just can't act adverse to your client's interests. Because there's an inherent conflict here between Nelson's statement to police and Carmelita Hall's interests. Counsel's subjective reasons for foregoing a defense based on Nelson's statement are not relevant. Counsel's choice of jointly arguing self-defense with Hall was not a free choice of strategy. It was the only course open to them. Any choice mandated by inconsistent obligations and surrendering a possible means of defense is impermissible. Does United States v. Fahey provide the proper standard for our analysis? Yes. Fahey provides a standard that implements Sullivan and provides a clear test, two prong test with the second prong having two different parts that this court can use and that we believe would be a good standard for this court to adopt because it requires the defendant to out, you know, to clearly identify a plausible alternative defense that could have been raised. And then to show whether, you know, if the defense was inherently in conflict with counsel's loyalty to another client or to show that it wasn't undertaken because of the conflict. The test was adopted. There's an additional component that Nicholson and the West Court use, West v. People, Colorado Supreme Court. But if this court looks to West, there's a good analysis there for the test. They are substantially similar. There are no possible reasons counsel could give. It would overcome the fact that counsel was ethically barred from helping the state prosecute Hall to benefit Nelson. Does this court have any further questions? Thank you. Mr. Leaplead. May it please the court, my name is Assistant State Attorney Eric Leaplead. I represent the people of the state of Illinois. Your Honors, I'd like to begin today by discussing the things that the parties do agree on. First of all, there is no categorical prohibition against dual representation in Illinois. And for that matter, at federal law either. Also in principle, there's no dispute between the parties as to the general analysis to be employed in the case of actual conflict. We agree that Collar v. Sullivan sets forth the proper analysis to prove an actual conflict. A defendant who has raised no objection at trial must demonstrate, one, her interests conflicted with those of a co-defendant represented by the same attorney, and two, the conflict adversely affected her lawyer's performance. We also agree that as noted in the Seventh Circuit's case of Taylor v. Ground, Illinois law can no longer support the rule. If a lawyer presents a viable defense, there can be no actual conflict, even if he forwent another defense. This is no longer good law and must be abandoned. This conflict's rule was set forth in this court's opinion, Peoples v. Eccles, which is a 1978 case which predates the Collar v. Sullivan standard from 1981. However, where we do disagree, Your Honors, is the defense attempt to remove the last part of the analysis of the Seventh Circuit's case of Taylor v. Grounds. The Seventh Circuit there correctly recognized that in order to prove an actual conflict under Collar v. Sullivan, a defendant bears the burden of proving, one, that his attorney made a decision to forego a viable defense potentially helpful to the defendant but would have hurt his co-defendant. And two, that the decision to forego this viable defense was tied to the dual representation. The court went on to note that to this latter point, a defendant must show a nexus between the decision to abandon a viable defense and the conflict itself. They stated, put another way, the defendant must show that his attorney was making basic strategic decisions in a manner that is adverse to the defendant. Defendant now seeks to repudiate Taylor v. Grounds because the last portion of the analysis is not necessary and in the defendant's estimation is contrary to Collar v. Sullivan. But, Your Honors, it is actually the defendant's position that is problematic. For instance, if the defendant is correct that we never explore the attorney's actual motivation to forego a defense, then this factual scenario, an attorney representing adverse interests for whatever reason, foregoing a viable defense is presumptively deficient. It is akin to a per se conflict. Because defendant's proposed analysis fails to take into account any actual legitimate reason that this attorney might have to forego this defense, it elevates the scenario to a prohibited representation, just like a per se conflict. Only the defendant in this case calls it an inherent conflict. In effect, the defendant's argument eliminates joint representation every time there is a potential for conflicting defenses. But as recognized by this court in People v. Spreitzer, this is virtually every joint representation. Treating multiple representation as creating a per se conflict would put an end to multiple representation altogether. Since it's a possible conflict that inheres in almost every instance of multiple representation, even in cases where a common defense gives strength to a common attack. Do you think we should adopt the formulation from United States v. Fahey? Your Honor, I think that Taylor v. Grounds sets forth the proper analysis in this case, and that is the analysis that we should follow. And but, you know, to go further, Your Honor, no matter what analysis this court uses, defendant's argument fails because she can't even meet the first factor of Karla v. Sullivan test. First, the defendant now agrees that her attorney presented the alternative viable defense, which would have been accountability. In other words, so there was no defense abandoned or foregone here. She thus fails to establish the very first factor of Sullivan, that her lawyer did not present an available defense. Your Honor, it's aware that the defense. Did defense counsel fully develop a lack of accountability defense? It was presented, and he argued. The evidence that we have in the record, Your Honor, about the fact that this was a fully developed defense, we see when her defense counsel asks to consider Carmelita Hall's statements to the emergency room doctor as evidence of statement against penal interest. The only purpose of admitting that statement is to show that Carmelita Hall herself admits to being the sole stabber in this case. And again, it shows that these defense, you know, that her attorneys, being the defendant's attorneys, are acting in her own best interest. But self-defense doesn't help this particular defendant, does it? Actually, self-defense in this case, I would argue, is not an antagonistic defense. In cases involving self-defense, because in multiple representations like we have here, what you have is Carmelita Hall is admitting that she did the stabbing. That's her defense. But she's saying, one, I was justified. Two, my crime should be mitigated to second-degree murder or involuntary manslaughter. So the defendant, when she argues that she's not accountable for Carmelita Hall's actions, she's not hurting Carmelita Hall's interests at all because, pursuant to her self-defense, she's already admitted this crime. What do we do with the fact that the lack of accountability is consistent with the defendant's statement? It was presented, Your Honor, and it was presented in argument, and we cited to that record sites where her defense attorney cited that she was not responsible. Are you saying even in light of that, self-defense would not be inconsistent? It is not inconsistent. But furthermore, Your Honor, we have to keep in mind this was a bench trial. Now, at a bench trial, obviously, you know, the defendant is entitled to the same due process that he would get at a jury trial. But arguments and certain rhetorical flourishes and development of defenses are unnecessary at a bench trial because you have a judge, and we can presume that the judge knows the law. That is the basis of Illinois law, that at a bench trial it presumes the law. And it is very common in a bench trial situation to have inconsistent defenses or arguing in the alternative. You know, it's just this would be developed differently if you had 12 lay people in front of you where you had to explain accountability law. So do you disagree with the basic premise of the defendant that the conflict arises when the attorney has to decide on which defense to use? That's precisely why Echols is no longer good law, Your Honor, just because there's no conflict that manifests at trial doesn't mean that at the time that they were making the decision there wasn't a situation where a conflict may have arisen. And that's really what Sullivan stands for. And that's my point, too, Your Honor, that no matter what analysis this court chooses to use, this court should use Taylor v. Grounds. The defendant still fails because this defense of accountability was presented to the court. And now in the reply brief, defendant is arguing that it's not satisfactorily raised, which goes beyond being an actual conflict of interest law. And when you're talking about a defense that's not actually raised, you're moving on to a Strickland analysis at that point, not actual conflict. Actual conflict analysis stops when you fail the first factor of Collier v. Sullivan. Now when they say and they acknowledge that it was not the primary defense and they quote the record for the amount of time that this defense attorney argued about self-defense versus accountability, now we're at prejudice and now it's Strickland. It is out of actual conflict because it was actually raised, Your Honor. And there was three defenses in this case. It was lack of accountability. Her attorney argued that she was justified. And if she was not justified under self-defense or defense of others, that her crime too should be mitigated to second-degree murder or involuntary manslaughter. And that was renewed in argument and also we see in page C110 of the record that this was brought up again in the motion for new trial where the defense argued that the evidence indicated that the stabbing of Morris Wilson, who is our victim in this case, was an independent act of Carmelita Hall. She has failed to maintain her burden under the first factor of Collier v. Sullivan. And assuming just for a moment for argument's sake that she has maintained this burden, she has failed to maintain her burden under the second factor of Collier v. Sullivan that the decision to forego the other viable defense was tied to the dual representation. There is no evidence in this record at all, Your Honors, that any decision by defendant's attorneys was tied to dual representation at all. Defendant has failed to maintain her burden under either factor of Sullivan, therefore the defendant has failed to establish an actual conflict of interest. And also I want to clarify one point for the record. We are not arguing in the least that the severance cured any actual conflict problems. We argued merely that the benefit went to the defendant because of this severance where she was able to ask the court to consider the other crimes evidence of Hall's, I'm sorry, I misspoke, the statement against penal interest of Carmelita Hall to the emergency room physician as evidence of her guilt. And that's an example of where that severance actually benefited her. If there are no further questions, for those reasons stated in our brief, we'd ask that you affirm the defendant's conviction. Thank you, Mr. Leafblad. Ms. Hartman? The State's position is that we are arguing for a categorical bar against dual representation that is incorrect. The situation is not the only example of a conflict of interest allegation that would fall under Sullivan. This is a situation involving co-defendants who made statements implicating each other in the same case. As I mentioned earlier, the example from Nicholson, Sullivan will apply to different situations. So there's certainly nothing here that even touches on those and there's nothing to support the State's position that we're arguing for a categorical bar. The State mentions that we're using the word inherent as inherent conflict. It does come from the Fahy test, but it's supported by Sullivan. Kyler v. Sullivan said an attorney can't adequately comply with the Sixth Amendment while he actively represents conflicting interests. The Taylor v. Grounds analysis, as outlined in detail in the reply brief, Taylor adds requirements to Sullivan that are not present in Sullivan. And the State's position that we're saying that Taylor says there needs to be a nexus between the decision to abandon a defense and the strategy employed at trial and that Taylor held that they must show the attorney made basic strategic decisions adverse to his client's interests, that's a Strickland analysis. The reason that we don't need counsel's reasons here in this case is because the conflict is so apparent from the nature of co-defendants where they're blaming each other in statements to the police. There are other situations, as the Colorado Supreme Court outlined in West, sometimes there may be problematic circumstances that suggest a conflict, but it's not clear. But where you have an inherent conflict that's clear from the record, counsel ethically could not throw his other client under the proverbial bus. He couldn't just solely blame Hall here. That's an inherent conflict. And there's nothing counsel could say that could justify his choice of defense because he couldn't make that choice. He wasn't able to do that. The State mentions that defense counsel asked for Hall's statement to the doctor admitting that she committed the stabbing to be admitted against her interest. Keep in mind that that statement was already admitted in Hall's case. The State already had that statement, and they had put it in by the time it was admitted in Nelson's case. This is not a situation where defense counsel had access to a statement that Hall made that the State didn't have and sought to admit it against her interest. This is something it was already there. And counsel barely used the statement. They mentioned it once in closing and then just diverted to another topic without making an argument based upon it. So speaking of the arguments that counsel made, the State is adamant that non-accountability was raised as a defense. But in case it's not clear, our position isn't that non-accountability wasn't raised satisfactorily. It's that it wasn't raised based on Nelson's statement. It wasn't just a general defense where counsel occasionally mentioned, oh, she didn't know or she wasn't there. Because, as I said earlier, counsel made arguments that basically were not consistent with most of the evidence in Nelson's statement. She said Nelson had walked away by the time the stabbing occurred. That's not true. That's not the non-accountability argument based on her statement. So it's certainly a specific argument that we're talking about here. The – an example of – and just an example of the conflict is illustrated by the way that counsel argued second degree, which is something the State noted. Counsel argued intense provocation or mutual combat. The only time counsel mentioned imperfect self-defense was in reference to Hall, when whoever the stabber was may have been acting in imperfect self-defense. But – and that was just the one time. But when you raise self-defense, isn't the natural second degree counterpart to that imperfect self-defense? As this Court knows, imperfect self-defense requires subjective belief on the part of the defendant that the use of force was necessary, which usually would come from someone's testimony. Any advice counsel gave Nelson on whether or not to testify is certainly going to be impacted by the conflict of interest with Hall. Although this is a bench trial, it is not true that you don't have to develop any defenses in a bench trial. The fact that a judge is presumed to know the law doesn't mean that defense counsel doesn't have to make arguments based on the evidence, marshal the evidence, and present it in a way that supports a defense favorable to the client to remind the court of some of the appropriate standards when they're not straightforward, reasonable doubt. These are things that counsel didn't do. And self-defense, the position here isn't that self-defense is by itself antagonistic. It's that Nelson's statement is antagonistic. The antagonistic defenses, the reason these trials were severed, was because of the statements blaming each other, because they blamed Hall. Her statement does rebut self-defense. So it's bad for Hall in two ways. And then it undermines her self-defense claim and blames her. This court has no more questions. For the reasons stated today and in our opening and reply briefs, I request that this court reverse Ms. Nelson's convictions and remand her case for a new trial with conflict-free counsel. Thank you. Case number 120198, People v. Nelson, will be taken under advisement as agenda number two. Thank you, Ms. Hartman and Mr. Leekblad. Thank you for your arguments. You are excused.